UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>v.                                                 )<br>)<br>**MARIO MARES,**                       )<br>        *Defendant.*            )<br>) | Case No. 23-cr-00252-ACR |

## MEMORANDUM OPINION

Defendant Mario Mares is charged via indictment with four counts related to his participation in the events at the United States Capitol on January 6, 2021. Following his arrest on August 2, 2023, Magistrate Judge John Parker of the Northern District of Texas ordered Mr. Mares detained pending trial. Mr. Mares now moves to revoke that pretrial detention order in favor of pretrial release. Dkt. 16, Motion to Revoke Magistrate's Detention Order.

Pretrial detention is the exception rather than the rule. *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Government carries the heavy burden of showing by clear and convincing evidence that no set of conditions exists that would reasonably assure the safety of the community were Defendant released. 18 U.S.C. § 3142(e)–(f).

For the following reasons, the Court finds that the Government has not met its burden. The Court therefore issues an accompanying Order directing that Mr. Mares be released pending trial subject to pretrial conditions. Dkt. 18.

### BACKGROUND

Defendant is a forty-nine-year-old resident of Ballinger, Texas. Dkt. 7, Pretrial Services Report, at 1. On July 26, 2023, a federal grand jury indicted Mr. Mares on four charges related to his participation in the events at the United States Capitol on January 6, 2021. Dkt. 1,

1

Indictment.  No one alleges that Mr. Mares has ever been violent and, this case aside, he has no criminal history.  *See, e.g.*, Dkt. 1; Dkt. 7 at 1.

Defendant made three alarming social media posts to a small online group in December 2020.  *See* Dkt. 16-4 at 5–6.  In one, he urged "every #patriot" to "go to your state capitol and local mayors offices heavily armed and drag out and either jail or execute all the known CORRUPT #politicians for treason!"  *Id.* at 5.  In another, "YOU WANT VIOLENCE??!  YOU #CELEBRITIES AND CORRUPT #POLITICIANS ARE FIXING TO FIND OUT WHAT VIOLENCE IS !! WE ARE FUCKIN TIRED OF ALL YOUR SHIT !!  WE ARE GOING TO FIND YOU AND WE THE PEOPLE WITH NO MERCY ARE GOING TO HANG OR EXECUTE YOU !!!"  *Id.* at 6.  A third read: "Time to start the LYNCHING party !!"  *Id.*

But Defendant's alleged activities on January 6 were more limited than his posts would have suggested.  On January 4 and 5, Mr. Mares drove to Fairfax, Virginia, from his home in Ballinger, Texas, with two other individuals.  *Id.* at 10.  On January 6, the men first attended the "Stop the Steal" rally outside the White House before proceeding to the U.S. Capitol grounds "between approximately 12:15 PM and 2:30 PM."  *Id.* at 13–14.  Photographs taken of Defendant that day show a bulge under his jacket on his right hip.  *Id.* at 14.  The Government alleges that the bulge was a concealed gun; Defendant denies this.  *Id.*; Dkt. 16 at 18.

Two-and-a-half years passed before federal authorities arrested Defendant at his home on August 2, 2023.  Dkt. 5.  The Government does not allege that Mr. Mares engaged in violent behavior or made any threats during the interim.  *See, e.g.*, Dkt. 1; Dkt. 16-4 at 19.

On August 8, 2023, Magistrate Judge John Parker of the Northern District of Texas held a detention hearing, during which he heard testimony from five witnesses, as well as oral argument, before ordering Defendant detained.  *See generally* Bond Hearing Transcript, No.

6:23-MJ-027 (N.D. Tex., Aug. 8, 2023) ("Bond Tr."). At his arraignment on September 11, 2023, Mr. Mares pleaded not guilty on all counts. Minute Entry dated September 11, 2023. He filed the instant Motion on November 11, 2023, Dkt. 16, and the Court held a status conference four days later to determine next steps. During that conference, the Government stated that it had no additional evidence to present, and both parties agreed that the Court could decide the Motion on the papers without further briefing or a hearing. Status Conference Transcript (Nov. 16, 2023).

## LEGAL STANDARD

The Bail Reform Act (the "Act") permits pretrial detention of defendants charged with certain serious crimes, including firearm offenses. *See* 18 U.S.C. § 3142(e)–(f). Even then, pretrial detention is the exception, not the rule, because individuals are presumed innocent until proven guilty. *See Salerno*, 481 U.S. at 755.

A defendant ordered detained by a magistrate judge pursuant to the Act may file "a motion for revocation or amendment of the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). The district court then reviews the detention decision *de novo*. *United States v. Klein*, 533 F. Supp. 3d 1, 7 (D.D.C. 2021). The court may order pretrial detention only if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Put differently, the court may order pretrial detention only if the defendant is a "flight risk" or poses a "danger to the community." *Klein*, 533 F. Supp. 3d at 8 (citing *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019)).

"To justify detention on the basis of dangerousness, the [G]overnment must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably

3

assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)).  This requires the Government to establish that the defendant "presents an identified and articulable threat to an individual or the community" that cannot be sufficiently mitigated by release conditions.  *Id*. (emphasis omitted) (quoting *Salerno*, 481 U.S. at 751).  To determine whether a defendant poses such a threat, courts must consider four factors: (1) "the nature of the circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) the person's "history and characteristics," and (4) "the nature and seriousness of the danger to any person or community that would be posed by the person's release."  18 U.S.C. § 3142(g).

Concerns about noncompliance—the primary concern the Government raises here—are part of the dangerousness assessment.  *Munchel*, 991 F.3d at 1280–81.  Ultimately, "'[t]he law requires reasonable assurance[,] but does not demand absolute certainty' that a defendant will comply with release conditions because a stricter regime 'would be only a disguised way of compelling commitment in advance of judgment.'"  *Id.* at 1283 (alterations in original) (quoting *United States v. Alston*, 420 F.2d 176, 178 (D.C. Cir. 1969)).

## ANALYSIS

Mr. Mares does not dispute that he is eligible for pretrial detention given the charges against him.  Accordingly, the Court must determine whether any "condition or combination of conditions will reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  Based on the current record, the Court concludes that there is not clear and convincing evidence that no condition or combination of conditions would reasonably assure public safety.  The Court therefore orders that Mr. Mares be released pending trial subject to pretrial conditions.

### A. Nature and Circumstances of the Offense

The D.C. Circuit has made clear that pretrial detention is not appropriate in all January 6 cases. *See Munchel*, 991 F.3d at 1284–85. Instead, courts must distinguish "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions" from "those who cheered on the violence or entered the Capitol after others cleared the way." *Id.* at 1284. In *United States v. Chrestman*, 525 F. Supp. 3d 14 (D.D.C. 2021), the court identified numerous factors to considering in making this differentiation. *Id.* at 26–27. Applying them, the Court finds that Defendant easily falls into the latter camp. To be sure, he has been charged with felony offenses, made threatening posts, and allegedly carried a gun onto the Capitol grounds. Dkt. 1; Dkt. 16-4 at 5–6. But the Government does not allege that Defendant acted on those threats or that he brandished that gun at any time. *See, e.g.*, Dkt. 1. Nor has the Government presented evidence that Defendant played a leadership role, entered the Capitol interior, vandalized property, or acted violently toward others on January 6. *See, e.g.*, Dkt. 16-4 at 4–19.

### B. Weight of the Evidence

The weight of the evidence concerning Mr. Mares's involvement favors detention. But as Magistrate Judge Parker noted, the weight of the evidence is the least important factor and rarely favors the defendant at this stage. Bond Tr. 62:17–23; *see Klein*, 533 F. Supp. 3d at 15. It certainly does not tip the balance in the Government's favor here, where the key question on the felony charges—whether the bulge in Mr. Mares's pocket was a concealed firearm—is disputed between the parties and the Court has nothing more at this point than pictures of the bulge to assess the charge.

## C. Defendant's History and Characteristics

The Court must also consider Defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and "whether, at the time of the current offense or arrest, [Defendant] was on probation, on parole, or on other release." 18 U.S.C. § 3142(g)(3). Defendant's history and personal characteristics persuade the Court that conditions of release could assure the safety of the community.

Defendant has no criminal record, history of drug or alcohol abuse, or mental or physical conditions. Dkt. 7. These considerations weigh against detention. And unlike Magistrate Judge Parker, the Court has before it numerous letters in support of Mr. Mares from family, friends, and neighbors—many of whom have known Mr. Mares for more than a decade. *See* Dkt. 16-1. The letters describe him in favorable terms. *See id.* His wife describes his efforts to collect and deliver donations for the communities hit hardest by Hurricane Harvey. *Id.* at 2. The assistant pastor at his church, the local justice of the peace, his coworkers, and others describe him as a loyal family man, a financially stable business owner, a law-abiding citizen, and someone who poses no threat to their community. *See generally* Dkt. 16-1. There is no reason to believe that these letters are disingenuous. The Court is therefore persuaded that Defendant has the type of stable and long-established financial, family, and community ties that disfavor detention.

## D. Nature and Seriousness of the Danger

Finally, the Court considers "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(4). "Consideration of this factor encompasses much of the analysis set forth above, but it is broader

6

in scope," as it requires the Court to engage in an "open-ended assessment of the seriousness of the risk to public safety." *United States v. Cua*, No. 21-cr-107, 2021 WL 918255, at *5 (D.D.C. Mar. 10, 2021) (internal quotation marks omitted) (quoting *United States v. Taylor*, 289 F. Supp. 3d 55, 70 (D.D.C. 2018)).

This factor formed the crux of Magistrate Judge Parker's detention determination. He was convinced by "the Government's argument and evidence . . . that [Mr. Mares] continue[s] to believe that [he] can carry a firearm anyplace, anytime, anywhere." Bond Tr. 66:8–67:11. The Government points to a statement by Mr. Mares to authorities that even if he had carried a gun into the Capitol, which he denied, "it still would have been a legal right, . . . it's a [c]onstitutional right to bear arms no matter what." Dkt. 16-4 at 24. This, of course, is an overstatement; the Second Amendment does know some bounds. But Mr. Mares was not taking a law school final or analyzing Supreme Court opinions when making this hyperbolic claim. And he certainly never stated, and no evidence suggests, that he would ignore a firearm prohibition if a condition of release.

Nor does the Court find that Defendant poses a danger to the community. Magistrate Judge Parker did not have before him the letters of support detailing Mr. Mares's background and community ties. And, in any event, the D.C. Circuit has made clear that "detention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight." *Munchel*, 991 F.3d at 1283. The Court does not find that Defendant is unlikely to comply with his conditions of release, that he poses a danger to the community, or that he is a flight risk.

Defendant has no criminal record or history of violence. Dkt. 7 at 1. The Government does not allege that he acted violently on January 6. Dkt. 1. More than two-and-a-half years

passed between January 6, 2021, and Mr. Mares's arrest on August 2, 2023.  Dkt. 5.  The Government concedes that it has no reason to suspect that Mr. Mares committed a single violent act or make a single threat during that period.  While the Court is troubled by Defendant's social media posts and the serious allegation that he brought a handgun to the Capitol, those nonviolent actions do not persuade the Court that he poses such a danger that no combination of release conditions could assure public safety.

## CONCLUSION

For the foregoing reasons and upon careful consideration of Defendant's Motion to Revoke Magistrate's Detention Order, the record from the Magistrate's detention hearing, the entire record, and the factors set forth in 18 U.S.C. § 3142(g), the Court finds that the statutory factors favor release pending trial.  The Government has not met its burden of establishing, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community if Defendant were released pending trial.  18 U.S.C. § 3142(e)–(f).  The Court therefore issues an accompanying Order granting Defendant's Motion, revoking the Magistrate's detention order, and ordering Defendant released pending trial subject to pretrial conditions.  Dkt. 18.

Date: November 16, 2023

_____
ANA C. REYES
United States District Court Judge